**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-106

UNITED STATES TAX COURT

AJ SCROGGINS AND KELLY E. SCROGGINS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27403-12S.                    Filed November 13, 2014.

AJ Scroggins, pro se.

Jeffrey A. Schlei, for respondent.

SUMMARY OPINION

CARLUZZO, Special Trial Judge: This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1] Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, subsequent section references are to the
Internal Revenue Code of 1986, as amended, in effect for 2010. Rule references
                                                          (continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated August 6, 2012 (notice), respondent determined an $8,393 deficiency in petitioners' 2010 Federal income tax and imposed a section 6662(a) accuracy-related penalty.[2] The issue for decision is whether as of the close of 2010 a loan that Mr. Scroggins (petitioner) had obtained in a prior year from a qualified employer plan (retirement plan) was in default so as to constitute a "distribution" from that retirement plan during 2010.

## Background

Some of the facts have been stipulated and are so found. At all times relevant, petitioners were married to each other.[3] At the time the petition was filed, petitioners resided in California.

---

[1](...continued)
are to the Tax Court Rules of Practice and Procedure.

[2]Respondent now concedes that petitioners are not liable for the accuracy-related penalty.

[3]Kelly E. Scroggins did not appear at trial and did not sign the stipulation of facts admitted into evidence at trial. Accordingly, the case will be dismissed as to her for lack of prosecution. See Rule 123. The decision to be entered with respect to her, however, will be consistent with the decision to be entered with respect to petitioner.

In December 2007 petitioner borrowed $29,700 from his section 401(k) retirement plan. The retirement plan was administered by the Mercer Trust Co. (Mercer), a subsidiary of Marsh & McLennan Cos., Inc. The proceeds of the loan were paid to him in a lump sum by check on December 24 of that year. Although it is not clear from the record, it appears that during 2008 he used some, or all, of the loan proceeds to purchase stock in Quebecor World (Quebecor), the company that he was employed by at the time. Petitioner sold or disposed of some, or all, of his Quebecor stock during 2009 with a resulting capital loss that was reported on his 2009 Federal income tax return and carried forward at least into the year in issue.

Not all of the terms of the loan have been provided. However, it appears that petitioner was obligated to repay the loan in monthly payments of $562.66. The payments started in March 2008 and ended in September or October 2010, before the loan was repaid, when petitioner lost his job with Quebecor because of an undescribed disability.

According to Mercer's records, the loan was in default as of the close of 2010 because petitioner failed to make the payments as required. Mercer issued to petitioner a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., showing a $17,459.19

taxable distribution--the amount then outstanding on the loan after taking into account the amounts repaid (retirement plan distribution).  Petitioners did not include the retirement plan distribution in the income reported on their timely filed joint 2010 Federal income tax return.  According to respondent, the retirement plan distribution is includable in petitioners' 2010 income.[4]

## Discussion

Section 402(a) provides generally that distributions from a qualified plan are taxable to the distributee in the taxable year in which the distribution occurs pursuant to the provisions of section 72.  The parties agree that the retirement plan distribution was made from a qualified plan within the meaning of section 402.

Generally, a loan from a qualified plan is treated as a distribution from the plan in the year the loan was made.  See sec. 72(p)(1)(A).  See generally Owusu v. Commissioner, T.C. Memo. 2010-186; Plotkin v. Commissioner, T.C. Memo. 2001-71.  There is an exception to this general rule, however, if the terms of the

---

[4]The deficiency here in dispute includes the additional tax imposed by sec. 72(t).  Except for the imposition of the tax in the notice, neither party made any reference to that additional tax in anything submitted before or during trial, and there is no evidence in the record regarding its applicability under the circumstances before us.  We assume and proceed as though the parties have resolved the matter between them, and their agreement can be reflected in computations to be submitted pursuant to Rule 155.

loan satisfy certain conditions. <u>See</u> sec. 72(p)(2).[5] If the exception applies, then no distribution is considered to have been made from the qualified plan if the borrower satisfied the terms of the loan. If the borrower defaults, however, a deemed distribution from the qualified plan is considered to have been made in the year of the default. <u>See</u> sec. 72(p)(2)(C); <u>Owusu v. Commissioner</u>, T.C. Memo. 2010-186; <u>Plotkin v. Commissioner</u>, T.C. Memo. 2001-71.

Petitioner now agrees, more or less, that he defaulted on the loan from the retirement plan; petitioners disagree with respondent on the year that the default occurred and on the year that the retirement plan distribution should be deemed to have been made. According to petitioners, the default and deemed distribution occurred in 2011 although nothing in the record suggests that they treated the retirement plan distribution as taxable for that year. According to respondent, the default, and therefore the deemed distribution, occurred in 2010.

Section 1.72(p)-1, Q&A-10, Income Tax Regs., addresses the timing of a deemed distribution upon a default on a loan from a qualified plan as follows:

---

[5]The parties proceed as though the exception applies to the retirement plan distribution; neither party suggests that the loan should be treated as a distribution in the year it was made.

"Failure to make any installment payment when due in accordance with the terms of the loan violates section 72(p)(2)(C) and, accordingly, results in a deemed distribution at the time of such failure."

Petitioners have offered no reason why the default should be treated as having occurred in 2011. Their claim that the default occurred in 2011 is undermined not only by their agreement that petitioner failed to make any payment on the loan after September or October 2010, but also by the records of Mercer that confirm that fact. We find that the default occurred in 2010. It follows that the retirement plan distribution is deemed to have been made during 2010 and is includable in petitioners' income for that year. Respondent's adjustment in that regard is sustained.

To reflect the foregoing as well as the express and apparent concessions of the parties,

An appropriate order of dismissal and decision will be entered under Rule 155.